## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **ROBERT V. WALLACE** | * | |
| *and all others similarly situated*, | | |
| | * | |
| **Plaintiffs** | | |
| | * | |
| v. | | **CIVIL No. 1:11-cv-02062-JKB** |
| | * | |
| **Freight Drivers & Helpers Local Union** | | |
| **No. 557 Pension Fund**, *et al.*, | * | |
| | | |
| **Defendants** | * | |
| | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Robert V. Wallace ("Plaintiff") brought this suit, on behalf of himself and others similarly situated, against the Freight Drivers & Helpers Local Union No. 557 Pension Fund and its Board of Trustees ("Defendants"), claiming entitlement to increased retirement benefits and alleging breach of fiduciary duty under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA").  Now pending before the Court are Defendants' Motion to Dismiss (ECF No. 6) and Plaintiff's Motion for Leave to Amend (ECF No. 11).  The issues have been briefed and no oral argument is required.  Local Rule 105.6.  For the reasons explained below, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED IN PART, DENIED IN PART, and HELD IN ABEYANCE IN PART, Plaintiff's Motion for Leave to Amend (ECF No. 11) is HELD IN ABEYANCE, and the parties are ORDERED to file supplemental memoranda.

1

I.      **BACKGROUND**

Plaintiff is a retired diesel mechanic and welder who worked for 32 consecutive years (1970-2003) at the Annapolis Junction Terminal under the jurisdiction of the Freight Drivers and Helpers Local Union 557 ("Local 557" or "the Union"), of which he was a member.  From 1970 to 1990, Plaintiff's employer(s) made pension contributions on his behalf to the Local 557 Pension Fund ("Local 557 Fund" or "Union Fund"), as required by their collective bargaining agreements.  In 1990, Plaintiff began work for a new employer, Motor Convoy (a.k.a. Allied Systems).  Plaintiff alleges that Motor Convoy, like other employers who operated in the Union's jurisdiction, was generally obligated under its collective bargaining agreement to contribute to the Union Fund.  But, in 1989, the Union and Motor Convoy were involved in a legal dispute that resulted in a settlement ("the Settlement Agreement") that, in pertinent part, allowed Motor Convoy to make pension contributions on behalf of its Baltimore Area employees to the Central States Southeast and Southwest Areas Pension Fund ("Central States") and required the Union and Central States to execute a reciprocal agreement ("the Reciprocal Agreement") between the two funds.  Plaintiff claims that when he began working for Motor Convoy in 1990, despite the fact that he was employed in Annapolis and not Baltimore, Motor Convoy erroneously began making contributions for his pension to Central States, presumably pursuant to the Settlement Agreement, and that it continued to do so until his retirement in 2003.  As a result, Plaintiff's service credits were split between the Union Fund and Central States.

Plaintiff alleges that when he and the other Motor Convoy employees at the Annapolis Terminal discovered that Motor Convoy was paying their contributions to Central States, rather than the Union Fund, the Union assured them that the change would not affect their eligibility for pension benefits and that when they retired they would be in exactly the same position as an

employee who had earned all of his service credit with the Union Fund.  When Plaintiff retired in

2003, he applied for, and received, partial pensions from both funds.  However, he alleges that,

contrary to the Union's representations, the combined benefits that he now receives are

substantially less than those received by similarly situated Union employees who retired with

exactly the same amount of service credit as he, but who earned all of their service credit with

the Union Fund.

In September of 2006, Plaintiff retained counsel and filed a request with the Fund for

recalculation of his benefits, claiming that he was receiving about $1,000 less per month than

other Union employees with the same amount of service credit.  Specifically, Plaintiff requested

that the Fund recalculate his pension from the Partial Unreduced Early Retirement Pension that

he was then receiving in the amount of approximately $559.00 per month, to a Partial Minimum

Pension in the amount of approximately $1,402.00 per month.

Plaintiff's argument to the Fund for his entitlement to a Partial Minimum Pension was as

follows.  First, Plaintiff pointed to the Plan terms regarding Partial Pensions.  Those terms, he

alleged, stated that a participant who had related service credit (*i.e.*, service credit earned with

any fund with which the Union Fund had a reciprocal agreement) would be entitled to a Partial

Pension based on the amount of benefits he would have received if *all* his service credit had been

earned with the Union Fund.  That is, the Partial Pension would be calculated by first

determining what benefits the participant would have been entitled to if all of his service credit

had been earned with the Union Fund, and then multiplying that amount by the percentage of the

participant's service credit that was actually earned with the Union Fund.  Plaintiff then pointed

to the Plan provision for Minimum Pensions, which were available to participants who were 55

or older at the time of their retirement and who had earned 25 or more service credits with the

Union Fund. Plaintiff argued that since he was over 55 when he retired and had more than 25 combined service credits, he would have been eligible for a Minimum Pension if he had earned all of his service credit with the Union Fund. Therefore, Plaintiff concluded, he was eligible to receive the rate of the Minimum Pension ($ 2,356.22) multiplied by the percentage of his combined service credit that was accumulated with the Union Fund (59.5%), for a total monthly payment of about $1,401.95.

In November of 2006, Defendants issued a decision denying Plaintiff's request for a Partial Minimum Pension. Defendants explained that the provision for the Minimum Pension was not added to the Plan until 1998, and that it specifically provided the Minimum Pension only for participants who "separate[d] from Covered Employment" in 1998 or later. They further explained that "Covered Employment" referred to employment with a "Contributing Employer," *i.e.*, an employer who was obligated under its collective bargaining agreement, or any other agreement, to contribute to the Union Fund. Defendants determined that Motor Convoy was not a contributing employer and that Plaintiff therefore separated from covered employment prior to 1998, making him ineligible for a Minimum Pension.

On April 30, 2007, Plaintiff filed an appeal. He argued that Defendants' reading of the Plan document was incorrect because it ignored the language of the Partial Pension provision reading:

> "Service Credits accumulated and maintained by a participant under a Related Plan shall be recognized under this Plan as Related Service Credits," and a participant shall be eligible for a Partial Pension under this Plan if s/he "would be eligible for any type of pension under this Plan if his Combined Service Credit were treated as service credit under the Plan."

Plaintiff argued that since he would be entitled to a Minimum Pension if his Service Credits with Central States were treated as Credit under the 557 Plan, he was therefore entitled, under the

provision above, to receive a Partial Minimum Pension even if he had separated from covered employment before 1998.  He further argued, however, that his employment with Motor Convoy *was* covered employment because Motor Convoy was obligated to contribute to the 557 Fund and had acted improperly in doing otherwise in his case.  In the alternative, Plaintiff argued that if he was not entitled to a Minimum Pension, then the Fund had erroneously calculated his Unreduced Early Retirement Pension benefits by using the accrual rate in effect at the time he last earned service credit with the Fund, rather than the rate in effect at the time of his retirement.

On July 30, 2008, the Union Board of Trustees denied Plaintiff's appeal.  The Board did not address Plaintiff's arguments regarding his entitlement to a Partial Minimum Pension, but it did explain why it believed that its initial calculation of his Unreduced Early Retirement Pension was correct.  First, the Board stated that in 2002 the Plan document was amended to reflect the adoption of a national agreement governing reciprocal pensions, the 2001 National Reciprocal Agreement ("2001 NRA").  The 2001 NRA provided that:

> The amount of the Reciprocal Pension Benefit with respect to all pension benefits, other than the Minimum Pension, shall be the Participant's accrued benefit with respect to Service Credit under this Plan calculated at the level of benefits in effect when the Participant last earned Service Credit under this Plan.

The Board stated that the 2001 NRA would govern the calculation of Plaintiff's Partial Pension so long as the other Fund with which he had credit, Central States, had also adopted it. Alternatively, the Board stated that if Central States had not adopted the 2001 NRA, then the calculation of Plaintiff's benefits would be governed by the 1965 National Reciprocal Agreement (1965 NRA), which would dictate the same result.

On July 27, 2011, Plaintiff filed this suit, alleging that: (1) Defendants failed to furnish him with plan documents and information upon request; (2) he was entitled to a recalculation of his pension benefits at a higher rate; (3) Defendants breached their fiduciary duty by failing to

inform the Annapolis Junction employees of the 1989 Settlement Agreement with Central States; (4) Defendants breached their fiduciary duty by failing to follow the terms of the 1990 and 1996 summary plan descriptions, on which Plaintiff and the other Annapolis Junction employees reasonably relied in deciding when to retire; and (5) Defendants breached their fiduciary duty by adopting improper amendments to the Plan document.  Defendants now move to dismiss the case on the grounds that each of these claims is barred by the applicable statute of limitations. Plaintiff, in turn, seeks leave to amend his complaint in order to allege that: (1) Defendants willfully concealed the 1989 Settlement Agreement; and (2) Defendants failed to provide Plaintiff with required notices of his right to appeal when they first granted his application for benefits.

II.      **LEGAL STANDARD**

A.      **Motion to Dismiss: FED. R. CIV. P. 12(b)(6)**

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of

misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 129 S.Ct. at 1950.

### B.     Motion for Leave to Amend: FED. R. CIV. P. (15)(a)(2)

Leave to file an amended or supplemental pleading should be "freely give[n] where justice so requires." FED. R. CIV. P. 15(a)(2).  A district court may deny leave, however, if: (1) the new pleading would prejudice the opposing party; (2) the moving party has acted in bad faith; or, (3) the new pleading would be futile (*i.e.*, if it could not withstand a motion to dismiss). *Perkins v. U.S.*, 55 F.3d 910, 917 (1995); *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006).  If a district court chooses to deny leave, it must give justifying reasons.  *See id* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

### III.     ANALYSIS

### A.     Defendants' Motion to Dismiss

Defendants seek dismissal of this action on the grounds that the claims advanced in each of the five counts of the Amended Complaint (ECF No. 4) are barred by various statutes of limitations.  The Court will address each cause of action in order.

### 1.     Count I: Failure to Produce Documents

Count I of the Amended Complaint alleges that Plaintiff requested Defendants to produce the Reciprocal Agreement between the Union Fund and Central States on several occasions during the internal claim process and that they refused to do so.  It requests relief under both § 1132(c)(1)(B) and § 1132(a)(3)[1] in the form of penalties and an injunction requiring that

---

[1] The Amended Complaint actually refers to § 1102(a)(3) rather than 1132(a)(3), but it is clear from context and from Plaintiff's brief on this matter that this was a typographical error.  Similarly, Plaintiff refers in his brief to having brought this claim under § 1024(b), but that is plainly incorrect.  The Amended Complaint contains no reference to § 1024(b) and, in any case, that section only provides the underlying obligation for plan administrators to provide documents and information to participants.  It is § 1132(c)(1)(B) that provides the right of action for an alleged breach of that obligation.  Although Plaintiff's multiple errors have generated some confusion, there is no dispute that the claims pled in Count I in fact arise under 29 U.S.C. §§ 1132(a)(3) & (c)(1)(B).

Defendants either produce the Reciprocal Agreement or else be prohibited from relying on its terms in calculating Plaintiff's benefits.

Defendants argue that the applicable statute of limitations for this claim is Maryland's one-year statute of limitations governing suits for fines, penalties, and forfeitures, MD. CODE ANN., CTS. & JUD. PROC. § 5-107. *See Corrado v. Life Investors Owners Participation Trust and Plan*, Civil Action No. DKC 08-0015, 2011 WL 886635 at *11 (D. Md. March 11, 2011) (unpublished).  They further argue that Plaintiff's cause of action must have accrued no later than July 30, 2008, the last date on which Plaintiff alleges they were obligated to produce the Reciprocal Agreement and failed to do so.  Thus, they conclude that the statute of limitations on the claim expired no later than July 30, 2009, well before Plaintiff filed this suit in 2011. Plaintiff concedes that Defendants are correct on this point with respect to his claim under § 1132(c)(1)(B).  That claim will therefore be dismissed.  Plaintiff's alternative basis for relief, § 1132(a)(3), will be discussed in section 3, below.

### 2.      Count II: Entitlement to Benefits

Count II alleges that Plaintiff is entitled to additional benefits under the Plan. Specifically, it alleges that Defendants acted arbitrarily and capriciously in denying his claims for a Minimum Pension and "a higher Partial Pension benefit," and seeks recovery of the additional benefits allegedly owed and clarification of his alleged right to receive these additional benefits in the future.

Defendants argue that Plaintiff's cause of action for judicial review of his benefits award accrued on April 1, 2003, when he received his first benefit payment, and expired three years later, in April of 2006.  They concede that the limitations period on ERISA actions is generally tolled until a participant has exhausted his internal administrative remedies with the plan.  They

argue, however, that where a participant waits until after the limitations period has expired to even begin pursuing his administrative remedies, his invocation of those remedies cannot revive the expired claim, regardless of any actions taken by the plan.  Here, Plaintiff did not request recalculation of his benefits until September 13, 2006, by which time, Defendants argue, the statute of limitations on his ERISA claim had already run.  They further note that the 1996 Summary Plan Description gives participants 90 days to appeal a denial of benefits, and that Plaintiff's request for recalculation, which they characterize as an appeal of his initial award, was therefore nearly three years too late under the terms of the Plan.  Therefore, they contend, that request and the subsequent appeal did not toll the running of the statute or otherwise revive the claim.  They therefore conclude that the claim is time-barred and should be dismissed.  Plaintiff argues, conversely, that a cause of action for benefits under ERISA does not accrue until a participant makes a request for benefits or recalculation of an award that is formally denied. Even then, he argues, the statute of limitations does not begin to run until he has exhausted all of his internal remedies with the plan.  According to Plaintiff, then, the statute of limitations on his claim began to run when Defendants finally denied his appeal on July 30, 2008, and would have expired on July 30, 2011, three days after he filed this lawsuit.

The Court finds that neither sides' position on this issue is correct.  Both sides invoke the rule, well-settled in this Circuit, that a cause of action under ERISA accrues when a participant's claim for benefits is formally denied.  *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir. 1989).  They err, however, in their respective applications of that rule to the facts of this case.  Defendants' error lies in its attempt to somehow characterize the granting of Plaintiff's application for benefits in 2003 as a "denial" of the application.  Even though Plaintiff now alleges that his award was improperly calculated, it is not evident from the complaint that the

manner in which the award was first made put him on notice of that (alleged) fact or in any other way indicated that he was being "denied" anything.   Conversely, Plaintiff's error lies in reading the above stated rule to mean that a formal denial of benefits is the *only* event that can trigger the accrual of a right of action.   Both sides ignore the fact that there is a broader rule that governs the accrual of ERISA actions, *i.e.*, the "discovery rule," which applies to all federal actions for which the time of accrual is not specified by statute.   *See Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-21 (3d Cir. 2007).   The "discovery rule" simply states that a cause of action accrues when the plaintiff knows or reasonably should know of his injury.   *Id*.   Tying the accrual of a cause of action to the denial of benefits is simply a specific application of the "discovery rule" in the ERISA context, representing the consistent judgment of courts that a plan participant is assumed to know of his injury when his application for benefits is denied.   *See id*.   Clearly, however, where the challenged action is the calculation of a benefits award, rather than the denial of benefits, a different approach is required.

Both sides have also overlooked the relevant precedent in this Circuit for determining when a cause of action for benefits accrues in the absence of a formal denial, which is the Fourth Circuit's decision in *Cotter v. Eastern Conference of Teamsters Retirement Plan*, 898 F.2d 424 (1990).   In that case, the plaintiff had applied for and received retirement benefits from a former employer, but discovered years later that he had been entitled to start receiving benefits at a significantly earlier date.   The Fourth Circuit held that since there was no "denial" of benefits to trigger the accrual of the Plaintiff's right of action, it would instead have to determine what other event would (or should) have put the plaintiff on notice that he was entitled to additional benefits and treat that event as the trigger.[2]   Several other circuit courts have reached similar conclusions.

---

[2] Defendants cite this Court's decision in *Ladzinski v. MEBA Pension Trust*, 951 F.Supp. 570, 574 (D. Md. 1997), which stated that "[a] cause of action for pension benefits accrues when an application for benefits is approved *or*

*See Novella v. Westchester County*, 661 F.3d 128 (2nd Cir. 2011); *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 520-21 (3d Cir. 2007); *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326 (9th Cir. 1996).

The Court will therefore treat Plaintiff's cause of action for additional benefits as having accrued when he knew or reasonably should have known of the alleged errors and improprieties in the Local 557 Plan's original calculation of his award. Determining when Plaintiff had or should have had the requisite knowledge is a factual inquiry, and the Court finds that the Complaint does not allege the facts necessary to resolve it. Defendants' motion to dismiss will therefore be denied with respect to Count II. Defendants will have the opportunity to raise the issue again, in a motion for summary judgment or at trial, if they so choose.[3, 4]

---

denied" (emphasis added). This is not necessarily inconsistent with the holding in *Cotter*, in that an award of benefits may sometimes put the beneficiary on notice that the plan has denied other benefits that the beneficiary applied for or believed he was entitled to. But, to the extent that *Ladzinski* suggests that a cause of action for additional benefits accrues as soon as an award is made, even if the beneficiary has no reason to know that he may be entitled to more than the amount awarded, it is obviously contrary to *Cotter* and to the "discovery rule" generally. *See also Rodriguez*, 872 F.2d. at 72 (purpose of tying cause of action to denial of benefits is to avoid "requir[ing] lay participants and beneficiaries to be constantly alert for errors or abuses that might give rise to a claim and start the statute of limitations running.") (internal citations and quotation marks omitted).

[3] In his response to Defendants' motion to dismiss, Plaintiff argues that Defendants waived any defenses based on the statute of limitations by failing to raise them with respect to either his internal request for recalculation of his benefits or the subsequent appeal. This argument, however, is based on a misunderstanding of the Fourth Circuit's decisions in *Thompson v. Life Ins. Co. of N. Am.*, 30 F.App'x. 160 (4th Cir. 2002) and *Hall v. Metropolitan Life Ins. Co.*, 259 F.App'x. 589 (4th Cir. 2007), on which Plaintiff relies. Those cases stand simply for the proposition that when a court reviews a plan administrator's decision to deny an application for benefits, its review is limited to the rationale offered by the administrator in its initial notice of denial and that the court cannot consider any reasons that the administrator offers later for the first time. This rule is simply inapplicable to the issues in this case. Defendants do not claim that they denied Plaintiff's request for recalculation because it was untimely. Rather, they claim that this suit should be dismissed because *it* is untimely. The reasons that Defendants offered for denying Plaintiff's internal claim simply have no bearing on whether Plaintiff has brought this suit within the time prescribed by federal law.

[4] Plaintiff also makes a number of other arguments to the effect that his internal claim for recalculation was timely under the Plan terms, that Defendants failed to give him the required notice of his right to seek review of his initial award, and that Defendants misled him during the claim process into believing that he would be able to file suit once his appeal had been decided. In view of the Court's ruling, these arguments are moot with respect to this motion. To the extent, if any, that they are relevant to any future disputes that may arise as to the timeliness of this action, Plaintiff may raise them again at the appropriate time.

### 3.      Counts I, III, IV, & V: Equitable Relief

Counts III, IV, and V of the Amended Complaint allege various breaches of fiduciary duty under 29 U.S.C. § 1132(a)(3), and Count I, in part, seeks equitable relief under the same statute for Defendants' alleged failure to produce requested documents.  Defendants argue that each of these claims is barred by the applicable statute of limitations.  The Court, however, is concerned that the relief Plaintiff seeks may not be available under § 1132(a)(3) at all, and that any determinations of timeliness based on rules specific to that statute might therefore be in error.  Specifically, as explained further below, the Court's provisional opinion is that the above-mentioned counts are in fact claims for benefits that must be brought, if at all, under § 1132(a)(1)(B).

The law is well-settled that relief under § 1132(a)(3) is available only where ERISA does not elsewhere provide an adequate remedy.  *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *accord Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir. 2006). Importantly, plaintiffs cannot evade ERISA's carefully designed procedures and rules for the adjudication of claims for benefits simply by recasting them as claims for breach of fiduciary duty or requests for equitable relief.  *See Korotynska*, 474 F.3d at 105-06.  Rather, the Fourth Circuit has held that where a Plaintiff's complaint originates as an individual claim for benefits, where "the only injury of which [he] complains is the termination of benefits and the resulting financial harm," and where the relief he requests is ultimately an award of benefits, then the claim arises under § 1132(a)(1)(B), regardless of how the plaintiff styles it in his complaint.  *Id.*

Applying the foregoing standards to the facts of this case, it seems clear that relief under § 1132(a)(3) would not be appropriate.  First, § 1132(c)(1)(B) of ERISA clearly provides an adequate (indeed, a specifically tailored) remedy for an administrator's failure to supply a

participant with requested plan documents and information.  As discussed above, Plaintiff has sought relief under that provision, but has failed to do so in a timely manner.  He cannot now avoid the consequences of that untimeliness by pressing the same claim under § 1132(a)(3). Similarly, § 1132(a)(1)(B) provides the appropriate remedy for all claims of entitlement to benefits.  *See Korotynska*, 474 F.3d at 105-06.  Counts III, IV, and V of the complaint all purport to seek equitable relief under § 1132(a)(3), but the specific relief they request in fact amounts to nothing more than a set of injunctions and orders aimed at compelling Defendants to recalculate Plaintiff's benefits award in the manner to which he believes he is entitled.  It appears to the Court, then, that under the law of this circuit, Count I is properly brought under § 1132(c)(1)(B) only, and Counts III, IV, V are properly brought under § 1132(a)(1)(B) only, and that all claims under § 1132(a)(3) should therefore be dismissed.  This would result in Count I being dismissed altogether, as Plaintiff has conceded that his claim under § 1132(c)(1)(B) is time barred.  Counts III, IV, and V would likewise be dismissed, although Plaintiff would have the opportunity to amend the complaint to consolidate any relevant factual allegations from these counts into a single cause of action for benefits under § 1132(a)(1)(B).

The Court has authority to dismiss an inadequate complaint *sua sponte*, provided that it employs procedures that are fair to the parties.  5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1357 (2d ed. 1990).  Indeed, where it is obvious that a complaint fails to state a legally cognizable claim for relief, a court has no discretion but to dismiss it.  *Id.*; *accord Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006).  Here, although Defendants have filed a motion to dismiss, they have not raised the issue of the proper characterization of the claims discussed above.  Since the Court raises this issue on its own motion, in the interest of fairness it will give the parties an opportunity to present any arguments

they may have as to why Plaintiff's claims for relief under § 1132(a)(3) should not be dismissed and/or recharacterized as claims for benefits under § 1132(a)(1)(B). The Court will therefore defer ruling on the remainder of Defendants' motion to dismiss until briefing on this issue is complete. A briefing schedule will be included in the order to follow.

### B.     Plaintiff's Motion for Leave to Amend

The Court will likewise defer ruling on Plaintiff's motion for leave to amend until the issue of the proper characterization of his claims is resolved, as the Court's decision on that issue may affect the propriety and/or necessity of the amendments Plaintiff seeks to make.

### IV.     CONCLUSION

Accordingly, an order shall enter GRANTING IN PART, DENYING IN PART, and HOLDING IN ABEYANCE IN PART Defendants' Motion to Dismiss (ECF No. 6), HOLDING IN ABEYANCE Plaintiff's Motion for Leave to Amend (ECF No. 11), and DIRECTING the parties to submit supplemental memoranda addressing the issues raised in Section III-A-3 of this memorandum.

Dated this 16th day of April, 2012

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

14