**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|   |   |
|---|---|
| **ROBERT V. WALLACE** *and all others similarly situated*, <br><br> **Plaintiffs** <br><br> v. <br><br> **FREIGHT DRIVERS AND HELPERS LOCAL No. 557 PENSION FUND**, *et al.*, <br><br> **Defendants** | CIVIL No. 11-2062-JKB |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Robert V. Wallace ("Plaintiff") brought this putative class-action suit against the Freight Drivers & Helpers Local Union No. 557 Pension Fund and its Board of Trustees ("Defendants") pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq*. ("ERISA"), seeking an award of increased retirement benefits and various forms of equitable relief. Now pending before the Court are Defendants' Motion to Dismiss (ECF No. 6) and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 11). The issues have been briefed and no oral argument is required. Local Rule 105.6. For the reasons explained below, both motions are GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

Plaintiff is a retired diesel mechanic and welder who worked for 32 consecutive years (1970-2003) at the Annapolis Junction Terminal under the jurisdiction of the Freight Drivers and Helpers Local Union 557 ("Local 557" or "the Union"), of which he was a member. From 1970

to 1990, Plaintiff's employer(s) made pension contributions on his behalf to the Local 557 Pension Fund ("Local 557 Fund" or "Union Fund"), as required by their collective bargaining agreements. But, in 1990, Plaintiff began work for a new employer, Motor Convoy (a.k.a. Allied Systems), who remitted his contributions instead to the Central States Southeast and Southwest Areas Pension Fund ("Central States"). When Plaintiff retired in April of 2003, he applied for and received partial pensions from both funds. He claims, however, that the total amount of benefits he received was less than what he would have been entitled to if all of his contributions had been made to the Local 557 Fund.

In September of 2006, Plaintiff filed an administrative claim with the Local 557 Fund, requesting that his benefits be recalculated and that he be awarded an increased partial pension. That request, and the subsequent appeal, were both denied. On July 27, 2011, Plaintiff filed this suit, seeking judicial review of his benefits award as well as equitable relief for various alleged breaches of fiduciary duty and statutory violations under ERISA.

Defendants responded to the complaint by filing a motion to dismiss (ECF No. 6), which alleged that all of Plaintiff's claims were time-barred. Plaintiff then filed a motion for leave to file an amended complaint (ECF No. 11), containing new allegations that he believed would demonstrate that the claims were timely. On April 17, 2012, the Court entered a Memorandum and Order (ECF Nos. 15 & 16), granting in part, denying in part, and holding in abeyance in part, the motion to dismiss, and holding in abeyance the motion for leave to amend. Specifically, the Court found that the complaint did not allege the facts necessary to rule on Defendants' statute-of-limitations defense with respect to Plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1)(B), and therefore denied the motion in that regard. The Court granted the motion with respect to Plaintiff's claim that Defendants failed to provide him with plan documents as

required by 29 U.S.C. § 1132(c)(1)(B), because it found that the one-year statute of limitations that applies to such claims had clearly expired.  With respect to Plaintiff's remaining claims alleging breaches of fiduciary duty and statutory violations, the Court held the motion in abeyance and ordered the parties to brief the issue of whether the equitable relief that Plaintiff sought under § 1132(a)(3) was available, or whether he was confined to seeking benefits under § 1132(a)(1).  The Court also held in abeyance Plaintiff's motion for leave to amend until this issue had been resolved.  The parties have now submitted their briefs and the Court is prepared to conclude its ruling on these motions.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss: FED. R. CIV. P. 12(b)(6)

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed.  *Iqbal*, 129 S.Ct. at 1950.

### B. Motion for Leave to Amend: FED. R. CIV. P. (15)(a)(2)

Leave to file an amended or supplemental pleading should be "freely give[n] where justice so requires." FED. R. CIV. P. 15(a)(2). A district court may deny leave, however, if: (1) the new pleading would prejudice the opposing party; (2) the moving party has acted in bad faith; or, (3) the new pleading would be futile (*i.e.*, if it could not withstand a motion to dismiss). *Perkins v. U.S.*, 55 F.3d 910, 917 (1995); *Laber v. Harvey,* 438 F.3d 404, 426 (4th Cir. 2006). If a district court chooses to deny leave, it must give justifying reasons. *See id* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

### III. ANALYSIS

#### A. Motion to Dismiss

The Amended Complaint contains five counts. The Court previously granted Defendants' motion to dismiss with respect to part of Count I, and denied the motion with respect to Count II. Below, the Court examines in turn the remainder of Count I and Counts III-V.

##### 1. Count I: Failure to Produce Documents

Count I of the Amended Complaint alleges that Defendants failed to furnish Plaintiff with plan documents upon his request. It cites two bases for relief: 29 U.S.C. §§ 1132(a)(3) & (c)(1)(B). In its previous Memorandum and Order (ECF Nos. 15 & 16) the Court dismissed Plaintiff's claim for relief under § 1132(c)(1)(B) because it found that the applicable one-year statute of limitations had expired long before Plaintiff filed this suit. The Court further suggested that Plaintiff might be foreclosed from pursuing relief on the alternative basis of § 1132(a)(3) in view of the Supreme Court's opinion in *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) and its Fourth Circuit progeny, *Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 105 (4th Cir.

4

2006), which hold that relief under that section is available only for injuries that cannot be adequately redressed under any of ERISA's other provisions. In response, Plaintiff made the rather peculiar argument that these cases do not prevent him from pursuing relief under § 1132(a)(3) because the relief he seeks is not an award of benefits. This argument suggests a mistaken reading of the case law. Neither *Varity* nor *Korotynska* hold that relief under § 1132(a)(3) is available whenever the remedy sought is not an award of benefits. Rather, the relevant inquiry in determining whether a plaintiff may pursue relief under § 1132(a)(3) is whether ERISA provides any other adequate remedy for the injury that he alleges. The injury that Plaintiff alleges in Count I is the denial of access to certain plan documents upon request. ERISA provides a specific remedy for this injury in § 1132(c)(1)(B). Further relief under § 1132(a)(3) is therefore unavailable. Accordingly, the remainder of Count I of the Amended Complaint will be dismissed.

### 2.    Count III:  Breach of Fiduciary Duties

Count III of the Amended Complaint attempts to state claims for several alleged breaches of fiduciary duty by Defendants with regard to their settlement of a law suit against Plaintiff's employer, Motor Convoy, in 1989.[1] The Stipulation of Dismissal and the Settlement Agreement from that case are attached to the Amended Complaint as exhibits. Those documents evince the following. In 1985, Motor Convoy established a terminal in the Baltimore Metropolitan Area and employed workers who were domiciled in Baltimore, including members of the Local 557. Motor Convoy made health-and-welfare and pension contributions for these employees to Central States. In 1986, the Union filed a grievance with the Eastern Conference Automobile

---

[1] The inartful drafting of the complaint, however, makes it difficult to discern precisely what some of these claims are. As a result, the Court has had to rely extensively on documents submitted as attachments to the complaint, particularly the letters exchanged by Plaintiff's former counsel and the Benefits Administrator of the Local 557 Plan with regard to Plaintiff's administrative claim for increased benefits. Some review of the contents of those documents is therefore necessary to explain the Court's ruling in this matter.

Transporters Join Committee, alleging that Motor Convoy's payment of contributions to Central States violated its labor contracts, which obliged it to make contributions to the Local 557 Fund instead.  The Committee denied the grievance.  The Union then filed a civil action in this Court, (Civil No. HM-86-3203), seeking to vacate the Joint Committee's ruling and to recover delinquent contributions that Motor Convoy allegedly owed.  Several years later, in 1989, the Union and Motor Convoy reached a settlement that required Motor Convoy to make health-and-welfare contributions to the Local 557 Health and Welfare Fund, but allowed it to continue to make its pension contributions to Central States "on behalf of all current and future eligible employees … in the Baltimore Metropolitan Area …." (Stipulation of Dismissal ¶ 9a., ECF No. 11-3).  The Agreement also required the Union and Central States to execute a separate "Reciprocal Agreement" that would ensure that employees whose service credit was divided between the two funds would receive the full amount of benefits to which they would otherwise have been entitled.

When Plaintiff began working for Motor Convoy in 1990, Motor Convoy began to make pension contributions on his behalf to Central States, pursuant to the 1989 Settlement Agreement.  The claims in Count III all essentially revolve around allegations that: (1) the Settlement Agreement was wrongly applied to Plaintiff and others at the Annapolis Terminal; and (2) Defendants failed to disclose the Settlement Agreement and the effect that it might have on Plaintiff's retirement benefits.  The Court will address these claims in turn.

Plaintiff argues that the 1989 Settlement Agreement should never have been applied to him for two reasons: (1) because the Agreement's terms referred only to Baltimore Area employees, of which he was not one; and, (2) because the settlement was not a properly adopted

amendment, since it was allegedly never executed by the Trustees of the Local 557 Fund.  The Court finds that claims for breach of fiduciary duty on either of these theories are untimely.

There is no dispute that 29 U.S.C. § 1113 provides the statute of limitations for claims of breach of fiduciary duty.  It reads as follows:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of--
>
> **(1)** six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> **(2)** three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Here, the action that Plaintiff alleges was a breach of fiduciary duty was the "application" of the 1989 Settlement Agreement to him.  The letter denying Plaintiff's initial administrative claim (which is attached as an exhibit to the complaint) makes clear that the Agreement was "applied" to him "when he became employed by The Motor Convoy in 1990."  (Claim Denial Letter at 3, ECF No. 4-7, Ex. 7).  Therefore, the latest possible date on which Plaintiff could have challenged the application was in 1996.

The other aspect of Count III is the claim that Defendants breached their duty by failing to disclose the existence of the Settlement Agreement and the effects it might have on Plaintiff's retirement benefits, as well as the alleged fact that the "Reciprocal Agreement" (which the Local 557 Fund and Central States were supposed to execute and attach as "Exhibit A" to the Settlement) was never executed or reduced to writing.[2]  Under the "omission" standard of §

---

[2] The Court does not entirely understand the meaning of this last allegation.  It would seem that, in order for it to be of any moment that Defendants did not disclose that the Reciprocal Agreement was never executed, Plaintiff would

7

1113, Plaintiff had six years from the last date on which Defendants could have cured the alleged omissions to file suit. The Court cannot say with any precision when this was, but it can be quite certain that Defendants could not have cured the alleged omissions after Plaintiff retired and applied for benefits in 2003. Even if the limitations period began to run only at this late date, it would have expired in 2009, well before Plaintiff filed this suit. Furthermore, even if the Court were to find that the statute of limitations was tolled while Plaintiff pursued his administrative remedies with the Plan, the Count III claims would still be untimely. Plaintiff filed his administrative claim for recalculation of his benefits in September of 2006, and his appeal was finally denied in July 2008, one year and ten months later. Tolling the limitations period during this time would mean, then, that the statute would have expired, at the latest, seven years and ten months from Plaintiff's retirement in April 2003, which would be sometime in February 2011, about six months before he filed the original complaint in this case.

In his proposed Second Amended Complaint, Plaintiff attempts to elide this conclusion by alleging that Defendants actively concealed the Settlement Agreement from him and his Annapolis colleagues in an attempt to defraud them and convince them that they were still earning service credit with the Local 557 Fund. He argues that, therefore, he had six years from the date of his actual knowledge of the alleged breach to file a claim. These allegations, however, are entirely conclusory and do not contain any of the elements necessary to state a claim of fraudulent concealment. To state such a claim, a plaintiff must show: "(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing[;]" and (2) that the plaintiff "w[as] not on actual or constructive notice of that

---

have had to have first been aware that such an agreement was required by the Settlement. But, Plaintiff claims that the fact of the Settlement Agreement itself was also withheld. The Court need not attempt to resolve these contradictions, however, because, as explained *infra*, any claims regarding Defendants' alleged failure to disclose facts relating to the 1989 Settlement Agreement would have accrued and expired at the same time (*i.e.*, before Plaintiff filed this suit).

evidence, despite (3) [his] exercise of diligence." *Browning v. Tiger's Eye Benefits Consulting*, 313 F.App'x. 656, 663 (4th Cir. 2009) (citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994)) (internal quotation marks omitted).  Plaintiff does not even come close to meeting this standard.  Instead, he has merely appended the label of "fraud" to his initial allegations that Defendants did not tell him about the 1989 Settlement Agreement.  Thus, Plaintiff cannot claim the benefit of § 1113's extended six-year (from the date of discovery) limitations period.

One final aspect of Count III is an allegation that Defendants applied an "oral formula" (*i.e.* the unwritten Reciprocal Agreement referred to in the 1989 Settlement) in calculating his pension benefits.  This appears to the Court to be entirely inconsistent with the rest of the allegations in the complaint, as well as the attached exhibits, both of which indicate that Plaintiff's award was calculated according to a National Reciprocal Agreement ("NRA") that was executed in 2001 and adopted by the Local 557 Plan in 2003.  However, the Court is also cognizant of the density and, in some places, the obscurity, of both the factual background of this dispute and the law that applies to it.  The Court will therefore give Plaintiff the benefit of the doubt that the apparent contradiction may be the result of an overlooked fact or a mistake of terminology or something of that like.

The next question, then, is whether Plaintiff may pursue equitable relief under § 1132(a)(3) for this alleged breach.  The Court finds that he may do so, in the alternative to his claim for benefits.  Other courts have found that a cause of action exists under § 1132(a)(3) whereby a plan beneficiary may challenge the application of a plan provision that causes him harm on the grounds that it was not properly adopted as a plan amendment.  *See Ross v. Rail Car America Group Disability Income Plan*, 285 F.3d 735, 740-41 (8th Cir. 2002) (challenges to

validity of amendments arise under § 1132(a)(3), even when ultimate result of declaring amendments void would be receipt of benefits).  It may turn out that Plaintiff has an adequate remedy for the alleged application of the "oral formula" in a claim for benefits under § 1132(a)(1)(B), in which he would argue that Defendants erroneously interpreted the plan in applying that formula to him.  If such an argument were to prevail, then equitable relief would be unnecessary and thus not "appropriate."  But, if it is determined that application of the "oral formula" was, in fact, required under the terms of the plan, then Plaintiff would have no way of obtaining relief under § 1132(a)(1)(B) even if, as he alleges, the formula had been improperly adopted, because the scope of the Court's review under § 1132(a)(1)(B) is strictly limited to the terms of the plan.  *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1876-77 (2011) ("The statutory language speaks of "*enforc[ing]*" the "terms of the plan," not of *changing* them.") (emphasis in original).

The last question is whether the claim is timely.  The Court finds that it cannot resolve this question on the basis of the complaint alone because the factual confusion surrounding the claim makes it impossible to determine when the "last action" occurred that constituted part of the alleged breach.

For these reasons, the Court will allow this claim to proceed.  Defendants will, of course, have another opportunity to raise appropriate challenges to the claim's timeliness and legal viability on a motion for summary judgment, when the factual record is more fully developed.

### 3. Count IV:  Failure to Follow Summary Plan Documents

Count IV alleges that Defendants published Summary Plan Descriptions ("SPDs") in 1990 and 1996 that promised that participants who qualified for partial pensions after retirement would have their benefits calculated according to the terms of a National Reciprocal Agreement

that had been in force since 1965 ("the 1965 NRA"), but that they amended the plan in 2003 to adopt a new NRA that had gone into effect two years earlier ("the 2001 NRA"). Plaintiff further alleges that the 2001 NRA resulted in lower partial pension benefits, but that he and his Annapolis colleagues never received notice of the amendment. He claims that he and his fellow employees "continued to work" for Motor Convoy based on the representations in the 1990 and 1996 SPDs that their benefits would be calculated using the 1965 NRA, and that they relied on those representations in deciding when to retire. Therefore, he alleges, Defendants breached their fiduciary duty by failing to follow the terms of the 1990 and 1996 SPDs when they calculated his benefits.

Plaintiff relies extensively on the *Amara* case in arguing that he can pursue equitable relief under § 1132(a)(3) for Defendants' alleged failure to follow the terms of the SPDs. That reliance is misplaced. Although *Amara* did plainly indicate that, under some conditions, a court may hold a Plan to the terms of its SPDs on equitable grounds (as, in essence, a form of estoppel), it did not purport to identify a blanket cause of action for a plan's alleged failure to follow the terms of an SPD. In fact, ERISA does not impose a duty on plan administrators to enforce the terms of SPDs. *See, Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012). Rather, the duty it imposes is to publish an accurate SPD in the first place. *See id.*; 29 U.S.C. §§ 1022(a), 1024. More specifically, the provision most relevant to the claims here requires administrators to provide notice of any "material modification" to the plan terms within 210 days of the end of the "plan year" in which the changes were adopted. But, even if the Court construes Count IV as claiming that Defendants breached their duty to provide notice of the "material modifications" brought about by the Plan's adoption of the 2001 NRA, the claims still fail. This is because Plaintiff clearly alleges that the amendment adopting the

2001 NRA was itself adopted in 2003. This would give the plan 210 days from the end of the 2003 plan year to provide the required notice of the material modifications. Plaintiff, however, Retired in April of 2003. Thus, regardless of the date on which the plan year ended, (*i.e.*, even assuming it could somehow have ended on January 1, 2003), Plaintiff retired before the notice of material modification was due. He cannot claim, therefore, that Defendant's failure to provide timely notice led to his detrimental reliance on the outdated SPDs in deciding when to retire. Since that is the only injury that Plaintiff alleges with respect to the SPDs, the claims in Count IV will be dismissed.

### 4. Count V: Improper Plan Amendments / Failure to Give Notice

Count V alleges violations of 29 U.S.C. § 1054(g) and (h). Subsection (g) prohibits plans from adopting any amendment that reduces the amount of benefits that participants have already accrued, while subsection (h) requires plans to provide participants with 15 days advance notice of any amendment that reduces the rate at which they will accrue benefits in the future. Plaintiff claims that: (1) the 2003 Amendment (discussed above) reduced his accrued benefits by changing the formula for calculating partial pensions; and (2) he did not receive 15 days' notice of the 1989 Settlement Agreement, which he alleges reduced the rate of his future benefit accrual.

First, as with challenges to amendment procedures, the Supreme Court's reasoning in *Amara* clearly indicates that challenges to the legality of amendment terms (such as alleged violations of § 1054(g) or (h)) cannot be addressed in a claim for benefits under § 1132(a)(1)(B). The Court will therefore allow Plaintiff to maintain these claims in the alternative to his claim for benefits.

12

Second, the Court finds that it cannot determine the timeliness of these claims based on the pleadings alone. In this jurisdiction, the limitations period for § 1054(g) and (h) claims is Maryland's general three-year period. *Herbert v. AAI UIC Retirement Plan*, Civil No. CCB-05-2283, 2006 WL 1996855 at *3 (D. Md. July 13, 2006); *see also Shofer v. Hack Co.*, 970 F.2d 1316, 1319 (4th Cir. 1992) (Stating that ERISA claims other than for breach of fiduciary duty are governed by Maryland's three-year statute of limitations for ordinary civil actions). As with other ERISA claims subject to the discovery rule, causes of action for violations of these subsections accrue when a participant knows or should know that there has been a "clear repudiation" of rights he believed he had under the plan. *See Romero v. Allstate Corp.*, 404 F.3d 212, 224-25 (3d Cir. 2005); *England v. Marriott Int'l, Inc.*, 764 F.Supp.2d 761, 770 (D. Md. 2011). Defendants' position is that Plaintiff knew about the alleged reductions at least by 2006 when his initial request for additional benefits was denied, and that the statute of limitations therefore expired by 2009. The Court does not agree. While Plaintiff may have discovered the terms of the 1989 and 2003 amendments in 2006, this does not automatically equate to knowledge of a clear repudiation of rights under the plan, since his claim for additional benefits was still subject to further administrative review.

The relationship between the accrual of a cause of action under § 1054(g) or (h) and the administrative review of a claim for benefits is somewhat convoluted, and the Court has been unable to locate case law in this jurisdiction that addresses the issue specifically. However, the District Court for the Northern District of Oklahoma has recently published an opinion in the case of *Pikas v. Williams Companies, Inc.*, 822 F.Supp.2d 1163 (N.D. Okla. 2011), that sets out a thorough and persuasive analysis of precisely this issue. In short, the *Pikas* court held that the time at which a cause of action accrues under § 1054(g) or (h) sometimes depends on whether or

not a plan participant files an administrative claim for the benefits that were allegedly reduced by amendment. That is, if a plan participant becomes aware of an amendment that clearly reduces his accrued benefits and then files an administrative claim with the plan demanding an award of those benefits, his cause of action under § 1054(g) will not accrue until all the administrative review available to him has been exhausted. On the other hand, if the participant does not file a timely administrative claim, then his cause of action will be deemed to have accrued at the time he became aware of the amendment. The court's reasoning was that a participant who is aware of the alleged benefit-reducing amendment and does not seek administrative review within the time allowed has a clear repudiation of his right to the benefits in the amendment itself. But, as long as a participant is still entitled to seek administrative review, the amendment itself is not a clear repudiation, because there is still a possibility that the plan will award him the disputed benefits after all.

      The Court recognizes that Defendants dispute whether Plaintiff's administrative claim was timely, and that this could affect when his causes of action accrued. Additionally, it is not obvious from the complaint precisely when Plaintiff became aware, or should have become aware, of the terms of the 1989 and 2003 amendments. Those issues, however, cannot be resolved on a motion to dismiss. The plain gravamen of the complaint is that Plaintiff did not become aware of the alleged amendments and their effect on the calculation of his pension, until he received the initial denial of his administrative claim for additional benefits, which was still subject to appeal. If that allegation is true, then Plaintiff's causes of action under § 1054(g) and (h) could not have accrued until the appeal of his claim was finally decided. Defendants' motion to dismiss Count V must therefore be denied and the issue of the timeliness of these claims must be resolved at a later date, either on a motion for summary judgment or at trial.

### B.     Motion for Leave to Amend

Plaintiff seeks leave to file a second amended complaint containing the following changes/additions: (1) allegations that Defendants fraudulently concealed the 1989 Settlement Agreement; (2) allegations that Defendants did not apprise Plaintiff of his "rights under the 2002 Department of Labor regulations" when they sent him his "benefit letter" in 2003; (3) changes in wording, including descriptions of the relief sought and additional details with respect to certain claims; and (4) correction of typographical errors.  Defendants object to the motion on the grounds that it is allegedly untimely, prejudicial, and futile.  The Court will address these objections in turn.

Defendants' first objection is that the motion is untimely because it was filed "over six months after the filing of the initial Complaint, and almost four months after Mr. Wallace filed his First Amended Complaint" and because it was filed "outside of the time limits for amending pleadings outlined in Rule 15(a) of the Federal Rules of Civil Procedure."  These arguments are not persuasive.  Rule 15(a) does not put any "time limits" on motions to amend a complaint.  It provides that a plaintiff may amend once, as a matter of course, within 21 days of service or a responsive pleading.  After that, it requires a plaintiff to seek leave of the court.  Plaintiff here has sought leave of the court and has not attempted to amend as of course.  The Court also does not see the relevance of how many months have elapsed since the filing of the original or first amended complaints.  A plaintiff may, with the Court's permission, amend his pleadings any time up to the entry of judgment if he presents a good enough reason.  Defendants also complain that Plaintiff has offered no explanation or justification for his failure to include the new allegations in his previous complaints.  But, under Rule 15, leave to amend should be freely given absent compelling reasons to the contrary.  A plaintiff's obligation to explain his failure to

include facts previously known to him in his original complaint does not arise until the deadline to amend pleadings set by a court in a scheduling order has expired, at which point the plaintiff must show "good" cause to modify the order. That is not the case here.

Defendants' second objection is that the amendment would cause them prejudice because the new factual allegations are designed to defeat their motion to dismiss, which was filed before Plaintiff's motion to amend. The Court need not consider the merits of this argument, however, because the new allegations have had no bearing on its ruling on the motion to dismiss.

Lastly, Defendants argue that the amendment would be futile. With respect to the allegations of fraudulent concealment, the Court agrees for the reasons explained above (*i.e.* that Plaintiff has failed to allege any course of conduct on the part of Defendants designed to conceal their alleged omissions or that he lacked constructive knowledge of the omissions despite exercising reasonable diligence.). With respect to the other additions, however, the Court does not agree. The only other substantive addition is the allegation that Defendants did not comply with Department of Labor regulations. Defendants argue that Plaintiff has included this allegation in an attempt to show his entitlement to equitable tolling of the statute of limitations with respect to Count II. However, the standard for determining whether an amendment is futile is whether or not it can withstand a motion to dismiss. Since the Court has already denied Defendants' motion to dismiss Count II, even without the added allegation, the Court cannot say that it is futile. Indeed, the Court has ruled that determining the timeliness of the claims in Count II will depend on further development of the factual record. Even if the allegations regarding DOL regulations wind up playing no useful role in determining the claims' timeliness, the Court sees no purpose in excluding them at this point.

The motion to amend will therefore be denied with respect to the allegations of fraudulent concealment and with respect to any matter relating to the portions of the complaint that the Court has ruled it will dismiss (*i.e.*, Counts I and IV in their entirety, and all of Count III except for the claim based on Defendants' alleged application of an unwritten benefit formula). It will be granted with respect to all other matters.

### IV. CONCLUSION

Accordingly, an order shall enter GRANTING IN PART and DENYING IN PART Defendants' Motion to Dismiss (ECF No. 6) and GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Leave to Amend (ECF No. 11).

Dated this 2nd day of July, 2012

BY THE COURT:

/s/
James K. Bredar
United States District Judge